**Michael Marnell SMITH, Appellant,**

v.

**Raymond K. PROCUNIER, Director of the Department of Corrections, Appellee.**

No. 85–4001.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1985.

Decided May 10, 1985.

Richard Bonnie, Charlottesville, Va. (J. Lloyd Snook, III, Paxson, Smith, Gilliam & Scott; Richard J. Bonnie, Charlottesville, Va., on brief), for appellant.

James E. Kulp, Sr. Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., Richmond, Va., on brief), for appellee.

Before WIDENER and MURNAGHAN, Circuit Judges and WARRINER, United States District Judge for the Eastern District of Virginia, sitting by designation.

MURNAGHAN, Circuit Judge:

It has not infrequently been observed that there must be a better, more expeditious, way for dealing with cases which present the most stressful and distressful decisions with which a judge or panel of judges may be faced, namely, those involv-ing appeals from denials of *habeas corpus* relief to criminal defendants convicted and sentenced to die. The offense here occurred on May 23, 1977. Michael Marnell Smith was convicted by a jury in James City County, Virginia on November 2, 1977 for the capital murder and rape of a young woman. On the following day, November 3, 1977, the jury heard evidence at the penalty/sentencing phase and recommended a sentence of death. In doing so, the jury had before it the Commonwealth's claim that there were two separate aggravating circumstances, one of dangerousness, the other of vileness. The jury found separately, with respect to each aggravating circumstance, that it alone merited imposition of the death penalty.

There followed the usual panoply of legal maneuvers:

1. An automatic appeal to the Supreme Court of Virginia, which affirmed the conviction and the death sentence. *Smith v. Commonwealth*, 219 Va. 455, 248 S.E.2d 135 (1978).

2. A denial by the Supreme Court of the United States of a petition for a writ of certiorari. *Smith v. Virginia*, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979).

3. A denial of a state court petition for writ of *habeas corpus* on March 14, 1980 following an evidentiary hearing on Smith's claim that there had been ineffective assistance of counsel.

4. The filing, on June 28, 1982, of a petition in the United States District Court for the Eastern District of Virginia for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. A magistrate issued a written report proposing dismissal of the petition. On December 4, 1984 the district court did so.

Now, on appeal, the case reaches us on the following issues:

1. Whether a Fifth Amendment violation occurred when a psychiatrist, consulted at the instance of Smith's counsel, was wrongly permitted to testify in the sentencing phase of the case about incriminating statements concerning an earlier attack

Smith described during the psychiatric interview.

2. Whether the assistance of counsel representing Smith at the sentencing phase was ineffective.

3. Whether jury instructions at the sentencing phase unconstitutionally compromised Smith's right to an individualized determination that death was the appropriate punishment.

It is evident that guilt is not contested. Smith questions solely the correctness of the sentencing procedures.

■ At the outset we are confronted with a contention by the Commonwealth that the absence of an objection by counsel to the psychiatric testimony under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) foreclosed the making of the point. The case imposes a burden on the convict to show cause for and prejudice in the failure to raise the issue.

That question under *Wainwright v. Sykes* has plagued the Court in prior instances. Potentially it could do so here for there is reason to doubt whether counsel for Smith could muster sufficient reason to constitute trial counsel's failure to object inexcusable neglect. The testimony of a psychiatrist whose interview with Smith took place through the initial urging of defense counsel was under Virginia law proper, even though his testimony was severely damaging to the defendant. *Gibson v. Commonwealth,* 216 Va. 412, 219 S.E.2d 845 (1975). At the federal level, the law precluding such testimony on Fifth Amendment grounds, at the time of the trial in November 1977, was not certain. Only subsequently, in *Gibson v. Zahradnick,* 581 F.2d 75 (4th Cir.1978), did the Fourth Circuit establish the impropriety on Fifth Amendment grounds of testimony concern-

ing damaging remarks of the accused during a psychiatric examination.[1]

One difficulty is presented by the case of *Honeycutt v. Mahoney,* 698 F.2d 213 (4th Cir.1983). There it was held that a lawyer could not be found to have afforded ineffective assistance where in October 1973 he failed to object to imposition on the defendant of the burden of proof. That the imposition was, indeed, improper was finally established by the Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The Supreme Court's decision came down two years after the trial had taken place. However, both the district court on September 29, 1972 and the decision of the First Circuit Court of Appeals on February 14, 1973 had announced the same rule of law, subsequently adopted by the Supreme Court, *before* trial took place in October 1973.[2]

Rather than take such an approach here, however, especially inasmuch as the continued vitality of *Honeycutt v. Mahoney* has been rendered uncertain by the recent decision of *Reed v. Ross,* — U.S. ——, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), we give weight to the consideration that we have before us a matter of life and death. The imminent execution of Smith serves as sufficient grounds to review the issue raised on the merits.[3] Since our determination on the merits is that Smith is not entitled to *habeas corpus* relief, we thereby, without displaying substantial disregard for *Wainwright v. Sykes,* at least, avoid the nagging concern that one possibly meritorious grounds for avoiding the termination of Smith's life went unconsidered. *Cf. Carrier v. Hutto,* 724 F.2d 396 (4th Cir.1983), holding that ignorance or oversight leading to the failure to raise a point on behalf of a criminal defendant may constitute cause

---

**1.** That is not to say, however, that there were not indicia of things to come which antedated the trial of Smith. *E.g., United States v. Albright,* 388 F.2d 719 (4th Cir.1968); *Gibson v. Zahradnick, supra,* at 78–79.

**2.** *Wilbur v. Robbins,* 349 F.Supp. 149 (S.D.Me. 1972); *Wilbur v. Mullaney,* 473 F.2d 943 (1st Cir.1973).

**3.** *See Hutchins v. Woodard,* 730 F.2d 953, 959 (4th Cir.1984).

sufficient to excuse failure to make a contemporaneous objection.[4]

On the merits, we immediately come up against the consideration that the jury's verdict recommending a death sentence was supported by two separate and distinct grounds of aggravation: (a) dangerousness (*i.e.*, violence) and (b) vileness.[5] The asserted errors of constitutional dimension relating to the admission of psychiatric testimony were in testimony directed to the question of "dangerousness."[6] The evidence presented to the jury supporting a showing of "vileness" was unchallenged. The testimony in the guilt phase of the case amply provided a basis for a decision that the crime was vile.[7] Having met the victim on a beach, Smith paused to help remove briars from her feet. The appearance of kindness immediately dissipated when Smith grasped the victim's arm, took her to a wooded area, produced a knife, and told her to undress. He then forced her to have intercourse and, following that, choked her, dragged her into the water, submerged her head, stabbed her, and left the dead victim lying where she fell. The immediate cause of death was drowning, although the testimony indicated that stab wounds and strangulation also could have been responsible.

This court recently decided in *Briley v. Bass*, 742 F.2d 155, 165 (4th Cir.1984), that any one aggravating circumstance deemed sufficient by the jury suffices:

[S]ince the jury returned a verdict finding the death sentence warranted under both the "vileness" and the "dangerousness" standard, it is of no importance whether the instruction on "vileness" was correct so long as the instruction on "dangerousness" was correct, provided, of course, the verdict of the jury was unanimous on the "dangerousness ground."

Similarly, the Supreme Court in *Zant v. Stephens*, 462 U.S. 862, 884, 103 S.Ct. 2733, 2746, 77 L.Ed.2d 235 (1983) stated that

[A] death penalty supported by at least one valid aggravating circumstance need not be set aside ... simply because another aggravated circumstance is "invalid" in the sense that it is insufficient itself to support the death penalty.

The effort is also made to depict Smith's trial counsel as ineffective for failure, having once elicited testimony that Smith was a sociopathic personality, subject to sexual deviation, to explore with two psychiatrists who testified the possibility that Smith suffered from a potentially mitigating mental incapacity. First, inquiry into the area meant resort to a double-edged sword, requiring the application of professional judgment whether to pursue a subject that already had proved unproductive. Second, counsel's professional wisdom in deciding not to do so was borne out because both psychiatrists have (at the state *habeas corpus* hearing) indicated that, had they been asked an opinion as to whether Smith suffered from a potentially mitigating mental incapacity, the answer in each case would have been negative.

Finally Smith's constitutional challenge to jury instructions at the sentencing

---

4. At the same time, we feel it only fair to counsel who represented Smith to point out that the question is very clouded as to whether the representation he afforded his client was, in fact, ineffective or that any prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

5. In the jury's verdict, the chameleon word "or" separates the finding of "probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society" from "his conduct in committing the offense is outrageously or wantonly vile." Any possible ambiguity is removed for us, however, by the determination of the Supreme Court of Virginia that "[t]he written verdict recited a finding of both aggravating circumstances." *Smith v. Commonwealth*, 219 Va. 455, 481, 248 S.E.2d 135, 151 (1978). *Cf. Briley v. Bass*, 750 F.2d 1238 (4th Cir.1984) where "shall" from the context was read as "may." Similarly, the context removes any doubt that "or" meant, and was understood to mean, "and."

6. The psychiatrist testified that Smith volunteered information that at some time prior to the incident for which he here stood convicted he assaulted a girl on a school bus.

7. In his instruction, the trial judge defined vile as torture, depravity of mind or aggravated battery to the victim.

phase as having deprived him of his Eighth Amendment right to an individualized determination that death was the appropriate penalty, *see Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978), runs up against contrary authority which is controlling. The constitutionality of the instructions of which Smith complains has been upheld by *Smith v. Commonwealth,* 219 Va. 455, 480, 248 S.E.2d 135, 150 (1978). Furthermore, in considering a similar instruction under the same Virginia statute, this court recently ruled that the instruction was not constitutionally defective. *Briley v. Bass,* 750 F.2d 1238 (4th Cir.1984). In the instant case, the language focused on as allegedly erroneous is: "if you find that other mitigating circumstances do not justify a sentence of death, you may fix the defendant's punishment at life imprisonment."[8] *Briley v. Bass* concluded that inclusion in the jury charge of "or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment ... at life imprisonment" left the instruction free of constitutional error.

The messages conveyed to the juries in the two cases are not substantially different in meaning. The refutation of the appellant's contention in *Briley v. Bass* dictates the same result here. The use in the instant case of "may" instead of "shall" does not overcome the consideration that reading the instructions as a whole makes it altogether apparent that a finding that other mitigating circumstances did not justify a sentence of death necessitated rejection of the death penalty. Just as consideration of all the circumstances in *Briley v. Bass* converted "shall" to "may" in the statement "you shall fix the punishment of the defendant at death," so here "may" should be read as "shall."

Accordingly, we conclude that the action of the district court in dismissing the petition for a writ of *habeas corpus* should be, and it hereby is, affirmed.

8. A related instruction read: "that when determining the punishment to be imposed ... you shall consider ... any other facts in mitigation

Since execution is fixed for May 15, 1985, we grant a stay for a period of twenty-one (21) days from the filing of this opinion to permit the petitioner to apply to the Supreme Court or a Justice thereof for a further stay.

AFFIRMED.

of the offense. Facts in mitigation may include, but shall not be limited to the following...."