# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-4262

DONALD RAY WALLACE, JR.,

*Petitioner-Appellant*,

v.

CECIL DAVIS,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 95-0215-C-B/S—**Sarah Evans Barker**, *Judge.*

———————

PETITION FOR REHEARING AND
REHEARING EN BANC

———————

DECIDED JUNE 28, 2004

———————

Before FLAUM, *Chief Judge*, and POSNER, COFFEY,
EASTERBROOK, RIPPLE, MANION, KANNE, ROVNER, DIANE P.
WOOD, EVANS, and WILLIAMS, *Circuit Judges.*

Petitioner-appellant filed a petition for rehearing and
rehearing en banc on April 9, 2004. A majority of the judges
on the panel voted to deny rehearing. A judge called for a
vote on the petition for rehearing en banc, but a majority of
the active judges did not favor rehearing en banc. Accord-
ingly, the petition is denied.

RIPPLE, *Circuit Judge*, with whom ROVNER, DIANE P. WOOD and WILLIAMS, *Circuit Judges*, join, dissenting from the denial of rehearing en banc. Federal Rule of Appellate Procedure 35 explains that rehearing should be granted when "(1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions" or "(2) the proceeding involves a question of exceptional importance." Both of these disjunctively-stated criteria in Rule 35—uniformity and exceptional importance—justify the court's rehearing this case en banc.

As to the first criterion, uniformity, the panel majority's holding that the line of cases including *Johnson v. Mississippi*, 486 U.S. 578 (1988); *Clemons v. Mississippi*, 494 U.S. 738 (1990); and *Sochor v. Florida*, 504 U.S. 527 (1992), applies only to the eligibility stage of the death determination, and not the weighing process itself, is at odds with those decisions and this court's decision in *Hough v. Anderson*, 272 F.3d 878, 906 (7th Cir. 2001) (a decision that the panel majority does not cite). Judge Williams' separate opinion succinctly makes this point; I simply add that the question is not even a close one. *Johnson*, *Clemons* and *Sochor* were all explicitly about the necessity of curing an infection in the *weighing process* when an erroneous aggravating factor has played a part in determining whether the defendant ought to be sentenced to death. In addition to the authority and specific passages provided by Judge Williams, the Supreme Court's summary of the relevant principle in *Sochor* is worth recalling:

> In a weighing State like Florida, there is Eighth Amendment error when the sentencer weighs an "invalid" aggravating circumstance in reaching the ultimate decision to impose a death sentence. *See Clemons v. Mississippi*, 494 U.S. 738, 752 (1990). Employing an invalid aggravating factor in the weighing process "creates the possibility . . . of randomness," *Stringer v. Black*, 503 U.S. 222, 236 (1992), by placing a "thumb

[on] death's side of the scale," *id.* at 232, thus "creat[ing] the risk [of] treat[ing] the defendant as more deserving of the death penalty," *id.* at 235. Even when other valid aggravating factors exist, merely affirming a sentence reached by weighing an invalid aggravating factor deprives a defendant of "the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." *Clemons*, [494 U.S.] at 752 (citing *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982)); *see Parker v. Dugger*, 498 U.S. 308, 321 (1991). While federal law does not require the state appellate court to remand for resentencing, it must, short of remand, either itself reweigh without the invalid aggravating factor or determine that weighing the invalid factor was harmless error. *Id.* at 320.

504 U.S. at 532.

As to the second criterion for rehearing, exceptional importance, we need only recall that the Supreme Court has calibrated carefully its jurisprudence in the capital punishment arena to ensure reliability in the State's decision to deprive a human being of life. *See Johnson*, 486 U.S. at 584 ("The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." (internal quotation marks and citations omitted)). The majority opinion in this case rides roughshod over a cornerstone in that jurisprudence—that invalid factors infecting the *weighing process* must be cured by the State. The panel majority's deviation from the course set by the Supreme Court is precisely the sort of exceptional error Rule 35 was intended to address.

It should not escape notice that, when the State filed its Answer to Mr. Wallace's Petition for Rehearing, it did not even attempt to defend the panel majority's restriction of

the *Johnson* line of cases to the eligibility stage. *See* Answer at 6. Rather, the State advanced, inter alia, that the state court trial judge did not take into account the invalid factors in the weighing process, and, thus, the *Johnson* line was not triggered. *See id.* Judge Williams' separate decision is in agreement with that proposition. Even assuming that is the case (and from my vantage point, the issue is close), rehearing is still necessary. First, the panel majority's error that *Johnson* and progeny only apply to eligibility permeates the majority's discussion and is not easily isolated.[1]

---

[1] For example, the opinion states that "[t]he problem in cases such as *Johnson*, *Zant*, and *Tuggle* arose because an accused was declared eligible for capital punishment on grounds that may have been erroneous, and it became essential to know whether, with the invalid ground sheared off, the accused still would be eligible." Slip Op. at 5. As discussed by Judge Williams' opinion, *see* Slip Op. at 14-15 & n.3, and in the text above, *Johnson v. Mississippi*, 486 U.S. 578 (1988*)*, was about nothing of the sort. *See id.* at 586 ("The prosecutor repeatedly urged the jury to give it weight in connection with its assigned task of balancing aggravating and mitigating circumstances 'one against the other.' [record citations omitted]. Even without that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Gardner v. Florida*, [430 U.S. 349, 359 (1977) (plurality opinion)].").

To the extent the panel majority's assertion is an attempt to run together *Johnson*—a case explicitly about a weighing state (Mississippi)—with *Zant* and *Tuggle*—cases about non-weighing states (Georgia and Virginia, respectively)—this too presents grave problems. Indiana is a weighing state, and in weighing states, aggravating factors play a significantly different role than in non-weighing states. In *Stringer v. Black*, 503 U.S. 222 (1992), the Supreme Court explained in language particularly appropriate for this case:

(continued...)

[1]  (...continued)

> With respect to the function of a state reviewing court in determining whether the sentence can be upheld despite the use of an improper aggravating factor, the difference between a weighing State and a nonweighing State is not one of "semantics," as the Court of Appeals thought, but of critical importance. In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty. Assuming a determination by the state appellate court that the invalid factor would not have made a difference to the jury's determination, there is no constitutional violation resulting from the introduction of the invalid factor in an earlier stage of the proceedings. But when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence. This clear principle emerges not from any single case, as the dissent would require, but from our long line of authority setting forth the dual constitutional criteria of precise and individualized sentencing. Thus, the principal difference between the sentencing systems of Mississippi and Georgia, the different role played by aggravating factors in the two States, underscores the applicability of *Godfrey* and *Maynard* to the Mississippi system.

*Id.* at 231-32 (citations omitted). The Supreme Court has been careful to separate its case law on weighing and non-weighing states. *See Tuggle v. Netherland*, 516 U.S. 10, 11 (1995) (per curiam) ("In *Zant v. Stephens*, 462 U.S. 862 (1983), we held that a death sentence supported by multiple aggravating circumstances need not always be set aside if one aggravator is found to

(continued...)

Also, whatever the correct outcome in this case, we remain under a fundamental obligation to ensure that the capital punishment jurisprudence of this court conforms to that of the Supreme Court. This obligation takes on special meaning when a panel majority speaks on an issue of immense importance in other death cases and does so in a manner that is fundamentally at odds with the Supreme Court's carefully crafted jurisprudence.

I respectfully dissent from the denial of rehearing en banc.

A true Copy:

　　　　Teste:

　　　　　　　　　　　　_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[1] (...continued)
be invalid. *Id.* at 886-88. We noted that our holding did not apply in States in which the jury is instructed to weigh aggravating circumstances against mitigating circumstances in determining whether to impose the death penalty. *Id.* at 874 n.12, 890."). So should we.

---